IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:99cr297-01

BEVERLY A. CLAIBORNE, JR.

## MEMORANDUM OPINION

This matter is before the Court on the defendant's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 478), the Response of the United States in Opposition to Defendant's Motion for Compassionate Release (ECF No. 484), the Reply Memorandum in Support of Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 488), and the information attached thereto. For the reasons set forth below, the defendant's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 478) will be denied.

## BACKGROUND

The defendant was convicted of conspiracy to distribute and possess with intent to distribute cocaine base and heroin, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841 (Counts Two-Six); distribution of heroin, in violation of 21 U.S.C. § 841

(Count Eight); murder in aid of racketeering activity (Count Nine); use of a firearm during a crime of violence (Count Eleven); and murder during a crime of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count Twelve).

On November 19, 2001, the defendant was sentenced to concurrent terms of life in prison on Counts One, Nine and Twelve, to be followed by concurrent five-year terms of supervised release if ever released; concurrent terms of 480 months in prison on Counts Two through Six, to be followed by concurrent five-year terms of supervised release; a concurrent term of 240 months in prison and four years of supervised release on Count Eight; and a consecutive term of 60 months in prison and three years of supervised release on Count Eleven. The defendant's convictions and sentences were affirmed upon appeal.

The record shows that for nearly six years, the defendant was a member of a drug distribution gang called the "17th St. Boys." There were approximately twenty other members of the gang and they conspired to possess with intent to distribute more than 100 kilograms of crack cocaine and three kilograms of heroin. The defendant and his co-conspirators sold drugs regularly in an open-air drug market controlled in the Blackwell area of Richmond. The gang maintained control over the area by use of violence and threats of violence. In essence, the gang created a safe zone for

drug trafficking activities and within the zone stash houses were located where the drugs and firearms in aid of the conspiracy were kept. The record reflects that the defendant was an active, violent member of the conspiracy. He shot several individuals during the course of the conspiracy, beat others, repeatedly shot at homes and cars and, ultimately murdered a customer of the conspiracy, operating under the erroneous belief that he was a Government informant. The defendant's sentence, as reflected in the presentence report, was driven by the murder and convictions and not by the drug quantity amount.

As the defendant alleges, much of his conduct occurred when he was young. By the time he was 22, he was being sentenced to the instant offenses and had a Criminal History Category VI attributable to 27 convictions in twenty different cases. The defendant seeks compassionate release because he is a black male suffering from long-term hypertension.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that

extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The guidelines teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the

4

disease and a particularized risk of contracting the disease at [his] prison facility." United States v. White, \_\_\_\_ F. Supp.3d \_\_\_\_, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

### 1. Particularized Susceptibility

The defendant has established that he suffers from chronic hypertension. The United States agrees that is the case. However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement. "BOP's guidance, read in conjunction with Application Notes § 1B1.13 teach that a defendant's medical condition must be one of substantial severity and irremediability . . . ." United States v. Lisi, No. 15-cr-457, 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020), reconsideration denied, 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020). The record does not show severity. The condition on which Claiborne bases his motion is a chronic condition "that can be managed in prison [and thus that it is] not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). In addition, Claiborne has not established that his medical needs cannot be met while incarcerated and, indeed, the medical records filed herein outline that he receives regular medical care, adjustment of his medications, and

5

testing related to his condition. His most recent test results show that his condition is under control but the two previous tests showed somewhat elevated blood pressure.

But, on this record, Claiborne has not met the particularized susceptibility risk facet of the applicable test.

### 2. Particularized Facility Risk

Nor has Claiborne met the particularized facility risk component of the appropriate test. His motion cites press releases respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at USP Lee, the defendant's facility of incarceration. Further, the record reflects that, at the time of the filing of the Government's papers, USP Lee had 2 active case of COVID-19 among inmates, 4 active cases of COVID-19 among staff, and 10 inmates and 31 staff members who had previously recovered from COVID-19. No deaths were reported. The USP Lee inmate population was 1,310.

In Claiborne's reply brief, he asserts that the 63 inmates and staff were infected and 66 inmates and staff had recovered. Although those figures represent an increased positivity count, they also show that the prison has a positivity rate of about 4% (inmates) and a good recovery rate. And, there were no reported deaths in the new figures. Even on the basis of the figures in

6

Claiborne's reply brief, the particularized facility risk component of the test is not met.

3.  **Assessment Under 18 U.S.C. § 3553(a)**

But, even if Claiborne had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community.

The defendant argues, in conclusory fashion, that he is not a danger to the community. That, he says, is largely because he committed the offenses of conviction over 20 years ago when he was young. He also asserts, in conclusory fashion and with no detail, that he has "done as much as he possibly could within prison, to prepare for release. He has worked a program review and thought about his discharge plan." (ECF No. 478, p. 17). He also says that he "has completed numerous challenging educational, vocational, and like-skill courses . . . and obtained an HVAC technician license." (ECF No. 488, p. 6). The record has no support for these assertions but the Court accepts them as true because they are made by an officer of the Court.

Commendable though those efforts are, they in no way call for

7

a reduction of sentence by virtue of compassionate release. The simple fact of the matter is that Claiborne's conduct in the offenses of conviction are among the most serious offenses that can be committed. Claiborne was a violent member of the conspiracy. In furtherance of its objectives, Claiborne shot people, beat people and murdered a customer.

He is a demonstrated danger to society. And there is nothing in the record that suggests otherwise, his efforts at self-improvement notwithstanding. The protection of society, the deterrence of the defendant, and the promotion of respect for the law all demand that the compassionate release provisions of the statute not be applied to release him from a most just and fair punishment.

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 478) will be denied.

It is so ORDERED.

/s/ *[signature]*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 4, 2021