IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:99cr297-01

BEVERLY A. CLAIBORNE, JR.,

    Defendant.

MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 603(b) OF THE FIRST STEP ACT (the "COUNSEL MOTION") (ECF No. 543); the WORKSHEET IN RESPONSE TO MOTION FOR COMPASSIONATE RELEASE (ECF No. 544); the Government's Response in Opposition to Defendant's Renewed Motion for Compassionate Release (ECF No. 546), the DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTION TO REDUCE SENTENCE PURSUANT TO 603(b) OF THE FIRST STEP ACT (ECF No. 547), the DEFENDANT'S SUPPLEMENTAL MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT ("SUPPLEMENTAL MOTION")(ECF No. 556), the NOTICES OF DEFENDANT'S SUPPLEMENTAL EXHIBITS TO HIS MOTION TO REDUCE SENTENCE PURSUANT TO 603(b) OF THE FIRST STEP ACT (ECF Nos. 548, 550, 551 and 559). For the reasons set forth below, the DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 603(b) OF

THE FIRST STEP ACT (ECF No. 543), and the DEFENDANT'S SUPPLEMENTAL MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 556) will be denied.

## BACKGROUND

The defendant, Beverly A. Claiborne, Jr., was convicted of conspiracy to distribute and possess with intent to distribute cocaine base and heroin, in violation of 21 U.S.C. § 846 (COUNT ONE); possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841 (COUNTS TWO through SIX); distribution of heroin in violation of 21 U.S.C. § 841 (COUNT EIGHT); murder in aid of racketeering activity in violation of 18 U.S.C. § 1959 (COUNT NINE); use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (COUNT ELEVEN); and murder during a crime of drug trafficking, in violation of 18 U.S.C. § 924(j) (COUNT TWELVE).

On November 19, 2001, Claiborne was sentenced to concurrent terms of life in prison on COUNTS ONE, NINE, and TWELVE, followed by concurrent terms of five years of supervised release if ever released; concurrent terms of 480 months in prison on COUNTS TWO through SIX, to be followed by concurrent terms of five years of supervised release; a concurrent term of 240 months in prison and four years of supervised release on COUNT EIGHT; and a consecutive

2

term of 60 months in prison and three years of supervised release on COUNT ELEVEN. Claiborne's convictions and sentences were affirmed on appeal. United States v. Claiborne, 36 F. App'x 73 (4th Cir. 2002).

For almost six years, Claiborne was a member of a drug gang called the "17th Street Boys." PSR ¶ 47. There were approximately twenty other members of the gang and they conspired to possess with intent to distribute cocaine and heroin. Id. Throughout the lengthy conspiracy, Claiborne and his co-conspirators sold drugs regularly in an open-air drug market in the Blackwell area of Richmond. Id. The 17th Street Boys maintained control over the area with violence and threats of violence. Id. at ¶ 50. In essence, the gang created a safe zone for drug trafficking activities. Id. Within that zone, stash houses were located where the drugs and firearms in aid of the conspiracy were kept. Id. ¶ 48. The record reflects that Claiborne was an active, violent member of the conspiracy. He shot several individuals, beat others, repeatedly shot at homes and cars, and murdered a customer of the conspiracy under the erroneous belief that the customer was a Government informant. Id. at ¶¶ 56, 57, 60, 64, 80.

The statutorily authorized sentence for COUNT ONE was 10 years to Life. The statutorily authorized sentence for COUNTS TWO through SIX was 5 to 40 years, for COUNT NINE it was Life or Death, and

for COUNT TWELVE it was any term of years, Life, or Death. COUNT ELEVEN carried a mandatory sentence of 60 months to run consecutively to any other imprisonment.

The Guidelines grouped together COUNTS ONE through SIX, EIGHT, NINE, and TWELVE. The Group Offense Level was 43, the base for First Degree Murder. Claiborne received 12 Criminal History Points, placing him in Category V. Therefore, the Guidelines called for a life sentence plus the 60 mandatory months from COUNT ELEVEN. Claiborne received a sentence of Life on COUNTS ONE, NINE, and TWELVE; 480 months concurrent on COUNTS TWO through SIX; 240 months concurrent on COUNT EIGHT, and 60 months consecutive on COUNT ELEVEN.

If Claiborne were sentenced today, he would still be subject to a mandatory life sentence for COUNT NINE. 18 U.S.C. § 1959. The statutory maximums for COUNTS TWO through SIX would be 20 years instead of 40. ECF No. 544, 1. There are no other changes in the statutory provisions. Id. at 2. Ini particular, the Guideline and statutory maximums today are as follows:

| Guideline Provisions | Statutory Provisions |
|---|---|
| Life, plus 60 months | |
| **Count 1:** Life (Combined) | **Count 1:** 10 years-Life **(no changes)** |
| **Count 2:** 240 months (restricted) | **Count 2:** 20 years **(reduced from 40 years)** |
| **Count 3:** 240 months (restricted) | **Count 3:** 20 years **(reduced from 40 years)** |
| **Count 4:** 240 months (restricted) | **Count 4:** 20 years **(reduced from 40 years)** |
| **Count 5:** 240 months (restricted) | **Count 5:** 20 years **(reduced from 40 years)** |
| **Count 6:** 240 months (restricted) | **Count 6:** 20 years **(reduced from 40 years)** |

4

| | |
|---|---|
| **Count 8:** 240 months (restricted) | **Count 8:** 20 years **(reduced from 40 years)** |
| **Count 9:** Life (Combined) | **Count 9:** Life or death **(no changes)** |
| **Count 11:** 60 months, consecutive | **Count 11:** 5 years, consecutive **(no changes)** |
| **Count 12:** Life (Combined) | **Count 12:** Up to Life or death **(no changes)** |

Worksheet in Response to Motion for Compassionate Release (§603) (ECF No. 544).

Claiborne's criminal history started at age 15. He incurred relatively petty convictions as a juvenile, including Failures to Appear, No Driver's License, and Assuming the Name of Another. PSR ¶¶ 97-101. Between ages 18 and 20, Claiborne continued to accrue minor convictions for similar offenses. Id. ¶¶ 102-117. Although minor in nature, his actions show a pattern of frequent disregard for the law. Claiborne's only previous serious offenses were in 1999 where he was found guilty of Trespass, Discharging a Firearm in Public, and Brandishing a Firearm. Id. ¶ 118.[1]

---

[1] Claiborne's previous motions for compassionate release have been denied. For example, in 2020 Claiborne filed a MOTION for Compassionate Release Pursuant to Section 603(b) of the First Step Act. ECF No. 478. It was denied. ORDER (ECF No. 494). The Memorandum Opinion assumed, for the purpose of argument, that Claiborne had met his burden on establishing an extraordinary and compelling reason for release and considered the § 3553(a) factors. ECF No. 493. The Court found that Claiborne was still a danger to the community and nothing in the record showed otherwise. Id. at 8. Therefore, even if Claiborne had established an extraordinary and compelling reason, relief should not be granted. Id.
    Claiborne then filed a pro se MOTION FOR REDUCTION OF SENTENCE AND/OR COMPASSIONATE RELEASE PURSUANT TO § 404 AND § 603 OF THE FIRST STEP ACT ("pro se MOTION") (ECF No. 512) on February 22, 2022. That pro se MOTION was denied, without prejudice. (ECF No. 542.)

The COUNSEL MOTION, (ECF No. 543), argues that Claiborne's sentence should be reduced pursuant to § 603 because there are extraordinary and compelling reasons for his release. The theory is that Claiborne likely would "not be sentenced as harshly for a variety of reasons." ECF No. 543 at 5. Those reasons are: (1) Claiborne was acquitted in state court for his convictions in federal court; (2) the powder cocaine to crack cocaine sentencing disparity that existed at time of sentencing; (3) Claiborne's young age at the time of the offenses; and (4) Claiborne's rehabilitation. Id. at 5-6. The COUNSEL MOTION also argues that the 18 U.S.C. § 3553(a) factors support compassionate release.

The SUPPLEMENTAL MOTION is really a supplemental memorandum in support of the COUNSEL MOTION. Indeed, it makes the same arguments made in the COUNSEL MOTION but updates them.

## DISCUSSION

### I.    The Statutory Framework

The applicable statute, 18 U.S.C. § 3582(c)(1)(A) provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that

extraordinary and compelling conditions exist for compassionate release under § 3582(c)(1)(A)(i). <u>United States v. White</u>, 378 F. Supp.3d 784, 785 (W.D. Mo. 2019).

As the United States Court of Appeals for the Fourth Circuit recently explained:

> Congress authorized 'compassionate release' in 18 U.S.C.§ 3582(c)(1)(A). That provision begins with the general rule that a 'court may not modify a term of imprisonment once it has been imposed.' <u>Id.</u> It then describes an exception to that rule, in which courts may consider motions made by defendants who have exhausted their administrative remedies and are seeking a sentence modification. <u>Id.</u>; <u>see also</u> <u>United States v. Bethea</u>, 54 F.4th 826, 831 (4th Cir. 2022). A court can grant a compassionate release motion if it finds that (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission' and (3) that the § 3553(a) factors weigh in favor of granting relief, 'to the extent that they are applicable.' <u>See</u> § 3582(c)(1)-(2).
>
> Elements one and two are supposed to work together. Because '[§]3582(c)(1)(A)(i) does not attempt to define the "extraordinary and compelling reasons" that might merit compassionate release,' the 'Sentencing Commission, pursuant to authority granted it by Congress,' does so instead. <u>McCoy</u>, 981 F.3d at 276 (quoting § 3582(c)(1)(A)(i))). But that only works when there is an applicable policy statement. . . . Without a policy statement applicable to compassionate release motions made by defendants, the district court had discretion to make its 'own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A). . . .' <u>Id.</u> at 284 (cleaned up).

>If a district court <u>finds extraordinary and compelling circumstances warrant a sentence reduction</u>, it must <u>then consider whether the factors in § 3553(a) support such a decrease</u>. The § 3553(a) factors include 'the nature and circumstances of the offense' as well as the defendant's history and characteristics, the 'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(1), (3), (6). They also include the need for the sentence 'to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense,' to deter criminal conduct, to protect the public and to provide the defendant with appropriate resources such as 'medical care' and 'vocational training.' <u>Id.</u> § 3553(a)(1). But district courts are only required to address the § 3553(a) factors 'to the extent that they are applicable.' § 3553(a).

<u>United States v. Burleigh</u>, 145 F.4th 541, 547-48 (4th Cir. 2025).

These principles guide the analysis of Claiborne's motion for compassionate release.

## II.  The Exhaustion Requirement

To begin, the Court may consider a motion for compassionate release only if the defendant has fully exhausted all administrative rights to appeal the failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the Warden of the defendant's facility whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). If the defendant has administratively exhausted his

claim for release or the Government does not contest the exhaustion requirement, the district court will conduct a two-step inquiry to decide whether to reduce the defendant's sentence under the statute. United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023).

Claiborne filed a request for a reduction in sentence on November 20, 2022, and received a denial on December 2, 2022. ECF No. 543, 5. The Government agrees that Claiborne exhausted his administrative remedies. ECF No. 546, 12. The record confirms that Claiborne has satisfied the exhaustion requirement.

## III. Extraordinary and Compelling Reasons

Now the inquiry turns to whether Claiborne has established the existence of extraordinary and compelling reasons that warrant compassionate release. The Sentencing Commission, as a matter of policy, has set forth six reasons that can be considered to be extraordinary and compelling under 18 U.S.C. § 3582(c)(1)(A)(i). They are:

> (b) EXTRAORDINARY AND COMPELLING REASONS.[2]—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
> (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT
> (2) AGE OF THE DEFENDANT
> (3) FAMILY CIRCUMSTANCES OF THE DEFENDANT
> (4) VICTIM OF ABUSE

---

[2] Subsections (1) – (4) have no application to this case so only the titles of the subsections are set out above. Subsection (2), Age of the Defendant, refers to old age, not the age based argument made by Claiborne.

(5)   OTHER REASONS.— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6)   UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

And, § 1B1.13(c) and (d) provide:

(c)   LIMITATIONS ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

(d)   REHABILITATION OF THE DEFENDANT.—Pursuant to 28 U.S.C. § 944(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(b)(1)-(6), (c), (d).[3]

---

[3] Claiborne relies on United States v. McCoy, 981 F.3d 271 (4th

Claiborne makes four primary arguments in favor of Compassionate Release: (1) his sentences on his drug charges were unduly harsh; (2) he was convicted in federal court after being acquitted in federal court; (3) his age at the time of the offense; and (4) his rehabilitation.

### A. Unduly Harsh Sentence

Claiborne argues first that his sentence on COUNTS TWO through SIX are the "product of unduly harsh sentences for drug charges" and he is thus eligible for relief under U.S.S.G. § 1B1.13(b)(6). ECF No. 543, 8. He also appears to argue that due to his age and rehabilitation he would likely be sentenced today to a lesser sentence. Id. It is true that at the time of sentencing, there was a significant disparity between the sentence guidelines for crack cocaine and powder cocaine. There still are disparities. Claiborne correctly notes that the crack and powder cocaine disparity disproportionately affected black defendants. Id. at 7. If sentenced today, Claiborne would be subject to a statutory maximum of 20 years instead of 40 years for COUNTS TWO through SIX. ECF

---

Cir. 2020), wherein the Fourth Circuit held that, in the absence of a Guidelines policy statement, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (citation omitted) (emphasis added). However, because in this case there is a Guideline policy statement, the "any extraordinary and compelling reason" that might be raised statement in McCoy does not apply.

No. 544, 1. Claiborne has served more than 10 years of the sentence on those counts. Id.

Claiborne further argues that, pursuant to changes to § 4A1.1, his Criminal History Category would now be IV instead of V. ECF No. 543, 8. He argues the change means his offense-level for COUNTS TWO through SIX would now be 22 and thus the guideline range for each would be 63-78 months. Id. However, that is not correct. Claiborne received a total of 12 Criminal History Points putting him in Category V. ECF No. 517 (PSR), 46. The change to § 4A1.1(a) would reduce the number of Criminal History Points by one, meaning that his Criminal History Points now would be 11 (ECF 544, 2), which still places Claiborne in Criminal History Category V.

Further, the disparity between crack and powder cocaine sentences is not appropriately addressed in a § 603 Motion. The remedy for such a disparity is a § 404 Motion. The Court previously denied Claiborne's pro se MOTION without prejudice and with leave to re-file a § 603 and § 404 motion separately. (ECF No. 542). Claiborne elected to file only a § 603 motion which is not a vehicle for addressing the powder/crack cocaine issue.

Moreover, this argument does not apply to Claiborne's life sentence for a conviction under 18 U.S.C. § 1959. If sentenced today on the § 1959 conviction, Claiborne would still be subject to a statutory sentence of life or death. 18 U.S.C. § 1959. His

age and rehabilitation would not change the statutory punishment, which cannot be subject to a departure or variance. In sum, Claiborne is not subject to relief for an unduly harsh sentence.

### B. Federal Prosecution After State Acquittal

Claiborne also argues that the fact that he was subject to a federal prosecution after he was acquitted in state court is an extraordinary and compelling reason for compassionate release. The Court construes this argument as an "Other Reasons" argument under U.S.S.G. § 1B1.13 because no other policy statement speaks specifically to it.

On January 7, 1999, Claiborne was acquitted of Murder and Use of a Firearm in Richmond City Circuit Court. Case No. CR9801108F-00. In September 1999, Claiborne was arrested on the first federal indictment. United States v. Claiborne, 92 F. Supp. 2d 503, 506 (E.D. Va. 2000). On November 3, 1999, the United States filed a superseding indictment charging Claiborne for the same underlying murder of which he was acquitted in state court – the murder of D'Antonio Johnson. Id. Also on November 3, 1999, Claiborne filed a Motion to Dismiss for a violation of the Double Jeopardy Clause. Id. The Court held that there was no violation of the Double Jeopardy Clause even though "the Court fe[lt] that the Defendant's Double Jeopardy claim has considerable merit." Id.

13

Although finding no Double Jeopardy violation, the opinion denying Claiborne's Motion to Dismiss did express serious concerns about the dual prosecution of Claiborne in both state and federal court because the "'ping-ponging' of Beverly Claiborne seem[ed] fundamentally unfair and [was] offensive, even to the average citizen." Id. at 509. Further, the opinion discussed the "most disturbing factor" in the sequential prosecution of Claiborne, the "variance in the racial composition of the two juries he has faced and will face. . . ." Id. at 510. A typical jury pool in the City of Richmond at time of Claiborne's trial was roughly 75% black. Id. (citing United States v. Jones, 36 F. Supp. 2d 304, 307-08 (E.D. Va. 1999)). In contrast, in the Richmond Division of the Eastern District of Virginia, a typical jury pool is roughly 10% black. Id. Notwithstanding the difference in the typical jury pool, the opinion denying the Motion to Dismiss concluded that there was no evidence that the second trial intended to seek a jury with fewer black people than Claiborne's state trial. Id. at 513.

The trial judge also expressed frustration with the prosecution for what it felt was "over indicting" a defendant to "try to scare somebody into pleading guilty." In the COUNSEL MOTION, Claiborne argues that the choice to charge Claiborne both with a count of Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959 and Murder During a Crime of Drug Trafficking in

14

violation of 18 U.S.C. § 924(j) is evidence of over-indictment, ECF No. 543, 8, and argues that there was no reason to double charge Claiborne for the same murder. Further, § 1959 requires a life sentence, while § 924(j) carries a sentence of any term of years with a maximum of life or death. Claiborne argues, and the trial judge seemed to agree in 2000, that the Government had overcharged Claiborne to encourage him to plead guilty. However, Claiborne did not plead guilty. Instead, he went to trial and was convicted of both charges.

Nonetheless, the opinion denying the Motion to Dismiss articulated a number of concerns with the decision to try Claiborne for a murder of which he had been acquitted in state court. In his argument on this topic, Claiborne reiterates much of the "harsh sentence argument" and, to that, he adds what seems to be a 1B1.13(b)(5) "OTHER REASONS" argument. (ECF No. 543, pp. 5-10). However, Claiborne has not shown that he was prosecuted on the basis of his race or that either the state jury's verdict (acquittal) or the federal jury's verdict (guilty) was the result of race. Nor has he shown that, in fact, he was "over-indicted." Thus, the trial judge's expressions of concern notwithstanding, Clairborne has not made out a case that his OTHER REASONS argument established an extraordinary and compelling reason for compassionate release.

15

### C. Age at Time of Offense

Claiborne next argues that his age at the time of the conspiracy and murder, between 15 and 19, favors compassionate release. (ECF No. 543, 11). He argues that, although federal life sentences are not prohibited for young adults who are above 18, a person's young age at the time of the offense conduct should nonetheless be considered because the reasoning in Miller v. Alabama, 567 U.S. 460 (2012) teaches that juveniles are less culpable for their actions than adults should continue to apply into a person's early 20s. Id. at 11-12 (citing Miller v. Alabama, 567 U.S. 460 (2012)). Miller's rationale was based in part on characteristics typical of young people, including immaturity, limited understanding of risks of actions, the heavy influence of family and peer pressure, and the effects of any dysfunctional background. Id. at 477. As Claiborne argues, the prefrontal cortex of young people is less developed, leading to rash decision-making. ECF No. 543, 12.

In McCoy, the Fourth Circuit approved consideration of the young age of a defendant when deciding a motion for compassionate release. United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020). Similar to McCoy, Claiborne was between ages 15 and 19 when he committed the predicate acts of the conspiracy and 19 when he murdered D'Antonio Johnson.

16

McCoy was decided before the Sentencing Commission established U.S.S.G. § 1B1.13 which defines the term Extraordinary and Compelling Reasons (see pp. 9-10 supra). So, as of McCoy, there was no Sentencing Commission Guideline on the topic. Now there is. And, the policy statement does not identify youthful age as comprising an extraordinary and compelling reason for compassionate release.[4]

Nonetheless, in Concepcion v. United States, 597 U.S. 481 (2022), the Supreme Court of the United States held that in deciding sentence reduction motions under § 404 of the First Step Act, the district courts were required to consider the defendant at the time of the motion, to take into account the circumstances of the offense, and to consider the changes in fact, such as rehabilitation and changes in law. There is no logical reason to find that the teaching of Concepcion applies any less in § 603 motions for sentence reduction. So, the defendant's youth at the time of the offense, a circumstance of the offense, and a topic of changes in the law since conviction can be considered in deciding a § 603 motion.

The policy statement in 1B1.13(b)(2) refers to "age of the defendant," but that reference is to old age, not youth. The

---

[4] Subsection (b)(2), The Age of the Defendant, refers to old age, not youth.

Government does not use the absence of youth in 1B1.13(b)(1)-(6) to argue that Claiborne's age cannot be considered in determining whether there exists an extraordinary reason for granting compassionate release. Rather, the Government argues that Claiborne's pattern of violent criminal behavior in furtherance of the drug distribution conspiracy undermines his argument about young people's lower culpability because the pattern of violence reflects not impulsivity or poor decision making, but a person who deliberately and with calculation used violence deliberately as a tool of control. ECF No. 546, 24.

The analysis can assume that, in concept, Claiborne's young age at the time of his offenses could influence, to some extent the choices he made because his pre-frontal cortex was not fully developed, and that he could be more subject to peer pressure, and thus was less able to fully appreciate the consequences of his actions. However, the record shows that Claiborne functioned as a person of influence (not, however, a leader) within the 17th Street Boys organization. Thus, there is no basis to find that he was unduly influenced because of his age. There is no record of mental disease or defect in Claiborne's history. Thus, there is nothing in the record to connect Claiborne with the factors which animated Miller.

18

Moreover, the record here also shows that Claiborne engaged in a calculated pattern of violence deliberately prosecuted to reinforce his ongoing drug distribution scheme. He previously shot one man's hand, beat another, and then killed D'Antonio Johnson. All of this was deliberate and planned. It was the opposite of impulsive. So, on this record Claiborne's youth argument is not sufficient to be an extraordinary and compelling reason for compassionate release.

### D. Rehabilitation

Rehabilitation alone is not a sufficient reason for compassionate release. U.S.S.G. § 1B1.13(d); 24 U.S.C. § 944(t). However, when combined with other factors, rehabilitation can form part of extraordinary and compelling reasons for release. U.S.S.G. § 1B1.13(d).

Previously in this case, the Court considered Claiborne's rehabilitation as part of the § 3553 factors (ECF No. 493), stating that: "[Claiborne] is a demonstrated danger to society. And there is nothing in the record that suggests otherwise, his efforts at self-improvement notwithstanding." Id. at 8. That conclusion was based on limited representations by Claiborne's attorney that Claiborne had "completed numerous challenging educational, vocational, and like skill courses . . . and obtained an HVAC technician license." Id. at 7, (citing ECF No. 488, p. 17).

19

However, Claiborne now has presented substantial evidence to support his rehabilitation argument. Claiborne is a member of the suicide watch team, a position requiring institutional trust. ECF No. 543-6, 1. A letter from the Director of the Bureau of Prisons, Charles E. Samuels, Jr., to the Suicide Watch Companions emphasizes his pride in the program and its potential to save lives. ECF No. 543-6, 3. Claiborne also completed the Life Connections Program in March 2024. ECF No. 556, 10. The Life Connections Program takes 18 months to complete. In those 18 months, Claiborne participated in over 1,200 hours of coursework, 100 hours of independent study, and more than 500 hours of community service. ECF No 556, 11.

Claiborne also worked in the Staff Dining Facility, which is a "higher position of responsibility than most positions inside a correctional facility and only given to inmates who have earned the position by showing a positive demeanor over an extended period of time." ECF No. 543-9, 2. Food Service Administrator Timothy Hunt stated that Claiborne "has always displayed the utmost respect for staff . . . expressed his willingness to learn, and [] has shown a positive attitude." Id. at 3. Correctional Counselor Brian Flanary wrote, "Inmate Claiborne interacts with inmates and staff in a respectful and positive manner on and off his assigned detail." Id. at 4.

In the beginning of Claiborne's term of incarceration, he accrued several disciplinary infractions. However, it appears that, since 2010, Claiborne has received no further disciplinary infractions. Further, his status as an employee at the Staff Dining Facility and as a Suicide Watch Companion illustrates that staff in BOP do not see the disciplinary infractions as reflective of his continuing character.

Thus, Claiborne has now demonstrated significant rehabilitation compared to the situation in 2021. However, rehabilitation alone does not establish an extraordinary and compelling reason. And, Claiborne's age-related argument failed on its merits so that argument cannot be used in combination with rehabilitation to support compassionate release. Nor can the failed double jeopardy argument or the harsh sentence argument.

However, § 1B1.13 permits a finding of extraordinary and compelling circumstances to be based on a combination of its constituent listed reasons. Claiborne, particularly in DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTION TO REDUCE SENTENCE PURSUANT TO 603(b) OF THE FIRST STEP ACT (ECF No. 547) argues that the combination of rehabilitation, age, and disparity of sentence constitute an extraordinary and compelling reason. But, in reality, there is no combination to be had. The record as to age cuts against, not in favor of, such a

circumstance.  And, the disparity of sentence argument relies on the powder/crack discrepancy which cannot be the predicate for the necessary finding.   Thus, there is no combination to be assessed.

In sum, the record here does not permit a finding that there exists an extraordinary and compelling reason for compassionate release, either on a specific singular ground or a combination of circumstances. Without such a finding, there is no necessity to assess the § 3553(a) factors.

However, if it is assumed that one of the singular predicates, or a combination thereof, does establish an extraordinary and compelling reason for compassionate release, it would be necessary to assess whether release is consistent with the § 3553(a) factors.

That analysis now follows.

## IV. 18 U.S.C. § 3553(a) Factors

Section 3553(a) instructs the courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense and promote respect for the law, the need to afford adequate deterrence, the need to protect the public, and the need to avoid any unwarranted sentence disparities, among other factors. 18 U.S.C. §§ 3553(a)(1), (2), (6).

**A.    Nature and Circumstances of the Offense**

The nature and circumstances of the murder of D'Antonio Johnson are extremely severe. The permanent loss inflicted on Mr. Johnson's family and community simply cannot be overemphasized. And, the drug trafficking activity went on for six years during which drugs were poured into the community.    And the drug trafficking was extremely and pervasively violent.    This factor augurs against release.

**B.    History and Characteristics of the Defendant**

In this analysis, the Court must consider Claiborne at present, including any rehabilitation. Concepcion v. United States, 597 U.S. 481, 492-93 (2022); Pepper v. United States, 562 U.S. 476, 490 (2011). Claiborne was raised in a tough neighborhood, where crime and violence were the norm. ECF No. 543, 13-14. He witnessed violence in the community, and in his home.    Once, as Claiborne walked home from school, he saw his friend's brother dead on the ground. Id. Claiborne's stepfather was abusive to his mother, and both his stepfather and mother struggled with substance abuse. Id. at 14-15. There can be little doubt that those childhood experiences affected Claiborne by exposing him to violence in his formative years and inuring him to violence.

In his teenage years, Claiborne acted out. He accrued many criminal offenses, most relatively minor. Id. at 15. Then, his

misconduct escalated when Claiborne got involved in a gang involved in the drug trade as a teenager. Once he joined the 17th St. Boys, he was consistently violent. He beat people, shot people, intimidated people, and ultimately murdered D'Antonio Johnson.

The record of rehabilitation discussed above, demonstrates that Claiborne is not the same person who was sentenced for the extremely serious crimes of which he was convicted. He is an inmate who has earned staff respect. He has completed many educational courses, including an intensive 18-month program. He has not incurred a disciplinary infraction in many years. He is a Suicide Watch Companion. He maintained positive relationships with his children even with the prospect of spending the rest of his life in prison. This factor augurs in favor of granting the COUNSEL MOTION.

### C.  Deterrence, Protection of the Public, & Need for Sentence to Reflect Seriousness of Offense and Respect for the Law

Claiborne's rehabilitative efforts tell that protection of the public, respect for the law, and deterrence components of the analysis count somewhat in Claiborne's favor. But the need for the sentence to reflect the seriousness of the offense strongly augurs against his case.  With the possible exception of treason, there is no crime more serious than the premeditated taking of human life.  And, that murder was for the venal purpose of furthering

24

the business of a drug conspiracy, itself a venal crime. What is more, that act of violence was a part of a long-standing part of shootings and beatings to aid in drug trafficking that, for six years, spewed drugs into the community.

In sum, Claiborne was sentenced as he was because his offense conduct was at the apex of serious conduct. And, that offense conduct is not counterbalanced, or subject to being written off by the fact that Claiborne has a strong record of rehabilitation, even one as strong as that presented by Claiborne.

This component of the analysis gives voice to the punitive, retributive aspect of sentencing because it seeks to assure that the punishment, in fact, fits the crime. And, in this case, the sentence is entirely appropriate to the grievous, long-standing, pattern of violence culminating in murder in the aid of racketeering (drug trafficking).

To grant Claiborne's motion, it would be necessary to somehow minimize the seriousness of the offenses of which he was convicted. That, on the record, cannot be done. The sentence was fair and reasonable and fit the crimes of conviction when imposed. It remains so today.

**D.   The Need to Avoid Any Unnecessary Sentencing Disparities**

To support the argument that granting the COUNSEL MOTION would reduce a sentencing disparity, Claiborne points to other cases in

25

which life sentences of youthful offenders have been reduced.  (ECF No. 543, pp. 18-19).  None of those cases involve the serious offense conduct which warranted the life sentence imposed in COUNTS NINE and TWELVE in this case.  There is no sentencing disparity in this case.

CONCLUSION

Considering the record as a whole, and for the reasons set forth above, the DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 603(b) OF THE FIRST STEP ACT (ECF No. 543), as supplemented by the DEFENDANT'S SUPPLEMENTAL MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 556) will be denied.

It is so ORDERED.

_____ /s/ _____
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: February 11, 2026